# IN THE COURT OF APPEALS OF IOWA

No. 18-1784
Filed February 20, 2019

**IN THE INTEREST OF C.K.,**
**Minor Child,**

**D.R., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Scott County, Nancy S. Tabor, Judge.

A father appeals the termination of his parental rights to his minor child. **AFFIRMED.**

Jack E. Dusthimer, Davenport, for appellant father.

Thomas J. Miller, Attorney General, and John McCormally (until withdrawal) and Anagha Dixit, Assistant Attorneys General, for appellee State.

Timothy J. Tupper, Davenport, guardian ad litem for minor child.

Considered by Doyle, P.J., and Mullins and McDonald, JJ. Tabor, J., takes no part.

**MULLINS, Judge.**

In November 2016, the mother of the child in interest was admitted to the hospital upon a drug overdose. The child was born by way of Caesarean section shortly thereafter. The child had numerous health complications due to the mother's drug use during gestation. The mother was married at the time, but the biological father of the child was unknown. The mother died shortly after giving birth. The child was placed in foster care. In January 2017, through DNA testing, the appellant was identified as the child's biological father. The father is not entirely sure of how many other children he has, but he reported to the Iowa Department of Human Services (DHS) that he has at least thirteen children with nine different women, not including two or three children who are now adults.

The father explained to DHS that he was willing to care for the child and desired that the child be placed in his custody. In February, the father advised DHS he lived in Illinois, and he was in the process of fixing up his home. Because the father resided in Illinois, DHS explained an interstate-compact-on-placement-of-children (ICPC) study would need to be conducted as to the father's residence before the child could be placed with him. The father indicated his willingness to cooperate with the study. In April, the child was placed in a new foster home near the Illinois border to facilitate more frequent visitation with the father.

Throughout the remainder of the case, the father was evasive with DHS in assessing the home for visitation suitability and with Illinois officials in conducting the home study. The father gave varying reasons for cancelling appointments and not allowing providers to visit the home. Although the father rents the home, the home is unlivable, his landlord reported the father never lived there, and the father

variously reported to service providers he lived in other locations or planned to move. Although the condition of the home improved somewhat between May and early August 2018, it was still uninhabitable. Further, the father denied a service provider's request to view the home to assess any progress shortly before the termination hearing. At the termination hearing, the father professed to be in possession of images depicting the home to be in a habitable state. The court left the record open for two weeks to allow the father to submit the images as evidence. The images were never provided. However, it appears the court was able to view them on the father's cell phone at the time of the termination hearing. In its termination order, the court noted "the photos reveal that there is still quite a bit of work to be done on this home before it will be appropriate for small children."

Ongoing concerns about whether the father was associating with women whom he had previous domestic-violence issues with also lingered throughout the life of the case. The father has an extensive history of domestic-violence occurrences with multiple women. As a result of an inability to verify a stable housing situation for the father, the ICPC request was denied. The father requested a home study be conducted on a former paramour's residence, but the father was unable to provide any information showing that he actually resided there. The father was offered liberal visitation throughout the case, but he was generally inconsistent in attending, cancelling or not confirming the visitation appointments on many occasions.

In December 2017, the State filed a petition to terminate the father's parental rights on numerous grounds, citing the father's continued association with women whom he has shared violent relationships and his inability to provide a

stable home for the child. In October 2018, the juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(h) (2017).[1] The father appeals this ruling.[2] Our review is de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

First, the father appears to challenge the statutory ground for termination cited by the juvenile court. He initially argues, "Requiring completion of the [ICPC process] would violate a parent's due process rights." We interpret this as an argument that a finding a child cannot be returned to a parent's custody within the meaning of Iowa Code section 232.116(1)(h)(4) based on non-completion of the ICPC process violates due process. None of the cases cited by the father support his position, nor do we find them to be on point.[3] As a result of the father's failure to cite authority supporting his argument, we deem the argument waived. *See* Iowa R. App. P. 6.903(2)(g)(3); *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). In any event, the juvenile court's finding that the child could not be returned to the father's care within the meaning of section 232.116(1)(h)(4) was not because the ICPC process could not be completed. Instead, both the finding that the child could not be placed in his care and the non-completion of the ICPC process were direct results of the father's "fail[ure] to provide appropriate housing for this child."

---

[1] The court also terminated the parental rights of the legal father. He was not involved in these proceedings and is not a party to this appeal.

[2] The father also purports to challenge a juvenile court ruling in the CINA case. However, his arguments on appeal only appear to relate to the termination ruling.

[3] *See generally In re C.C.*, No. 16-0995, 2016 WL 4379344 (Iowa Ct. App. Aug. 17, 2016); *In re P.R.*, No. 15-1411, 2015 WL 5970449 (Iowa Ct. App. Oct. 14, 2015); *In re X.J.*, No. 13-1739, 2014 WL 69534 (Iowa Ct. App. Jan. 9, 2014); *In re T.D.*, No. 09-1144, 2010 WL 624251 (Iowa Ct. App. Feb. 24, 2010).

Next, the father argues, "There was not true continuing 'risk of adjudicatory harm' regarding" the child being placed in his care. We also interpret this as a challenge to the sufficiency of the evidence for section 232.116(1)(h)(4). An inability to provide stable and appropriate housing, which the record clearly and convincingly establishes the father has been unable to provide throughout the life of this case, amounts to an adjudicatory harm precluding placement of a child in a parent's care. *See* Iowa Code § 232.2(6)(g); *see, e.g.*, *In re A.B.*, No. 18-0358, 2018 WL 3060276, at *3 (Iowa Ct. App. June 20, 2018); *In re J.M.*, No. 18-0163, 2018 WL 1631391, at *2 (Iowa Ct. App. Apr. 4, 2018); *In re T.S.-G.*, Nos. 16-1821/16-1899, 2017 WL 513956, at *4 (Iowa Ct. App. Feb. 8, 2017); *In re K.J.*, No. 16-1329, 2016 WL 6652435, at *1 (Iowa Ct. App. Nov. 9, 2016); *In re K.H.*, No. 03-0671, 2003 WL 21459582, at *2 (Iowa Ct. App. June 25, 2003). We find sufficient evidence to support termination under section 232.116(1)(h).

Third, the father argues termination of his parental rights is not in the child's best interests, *see* Iowa Code § 232.116(2), because termination would be detrimental to the child due to the closeness of the parental-child relationship. *See id.* § 232.116(3)(c). We choose to separately address the often-conflated best-interests and statutory-exception arguments.

In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2). The child has been out of the father's care his entire life. The father has been amply aware that the main concern in these proceedings has been his inability to provide

a consistent, suitable, and stable home for the child. The father has been unable to establish his ability to provide this basic necessity for roughly a year and half.

On the other hand, the child has been in the same foster home since April 2017. The foster parents are able to meet the child's physical, mental, and emotional needs, and the child shares a strong bond with the foster parents. The foster parents are willing and able to adopt the child. We fully acknowledge the child shares a clear bond with the father, the father loves the child, and the father is able to appropriately parent the child. However, "[i]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will . . . be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010)). This child needs permanency and stability now. *See id.* at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). Contrary to the father, the foster parents, who are willing to adopt, can provide immediate permanency and stability, which are in this child's best interests. *See* Iowa Code § 232.116(2)(b); *cf. In re M.W.*, 876 N.W.2d 212, 224–25 (2016) (concluding termination was in best interests of children where children were well-adjusted to home with their foster parents, the foster parents were "able to provide for their physical, emotional, and financial needs," and the foster parents were prepared to adopt the children). "This child should not be forced to wait any longer while [his] parent attempts to create a stable home." *K.H.*, 2003 WL

21459582, at *3. We conclude termination of the father's parental rights is in the child's best interests.

As to the statutory exception to termination cited by the father, "The court need not terminate the relationship between the parent and child if . . . [t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The application of the statutory exceptions to termination is "permissive not mandatory." *M.W.* 876 N.W.2d at 225. "[T]he parent resisting termination bears the burden to establish an exception to termination." *A.S.*, 906 N.W.2d at 476. The evidence presented does reveal a clear bond between the father and child. However, no evidence was presented that "termination would be detrimental to the child" as a result of the severance of that bond. *See* Iowa Code § 232.116(3)(c). Instead, given this child's young age and the fact that he has never been in his father's care, we find the effect termination will have on the child will be limited at most. We conclude the father failed to meet his burden to establish the statutory exception to termination. *See A.S.*, 906 N.W.2d at 476.

We affirm the termination of the father's parental rights.

**AFFIRMED.**

Doyle, P.J., concurs; McDonald, J., dissents.

**McDONALD, Judge** (dissenting).

I respectfully dissent. As the juvenile court noted in the termination order, "This case is a close call." I agree. But the State is tasked with proving its case by clear and convincing evidence. Clear and convincing evidence "is the highest evidentiary burden in civil cases. It means there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016). "This significant burden is imposed on the State to minimize the risk of an erroneous deprivation of the parent's fundamental liberty interest in raising his child." *Id.* In my view, when the evidence is in equipoise, as it is here, the tie goes to the parent. I would reverse the order terminating parental rights.